**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

February 5, 2024

Brian E. Farnan, Esquire
Farnan LLP
919 North Market Street, 12th Floor
Wilmington, DE  19801

Rudolf Koch, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE  19801

RE:  ***Mercury Partners Management, LLC v. Valo Health, Inc.,***
     Civil Action No. 2023-0318-MTZ

Dear Mr. Farnan and Mr. Koch:

As you are aware, plaintiff Mercury Partners Management (the "Representative"), representing the securityholders of Courier Therapeutics, Inc. (the "Company"), asserts the Company's buyer, defendant Valo Health, Inc. (the "Buyer"), breached its promise in a Securities Purchase Agreement (the "SPA") to "use Commercially Reasonable Efforts to develop and obtain marketing approval by the FDA" for the Company's novel cancer therapeutic.[1]  The SPA defined "Commercially Reasonable Efforts" as

> the level of efforts consistent with the efforts that a similarly situated, early stage biotechnology company would typically devote to a similar product of similar market potential, at a similar stage in its development or product life, taking into account development, commercial, legal and regulatory factors, such as [1] efficacy, [2] safety, [3] patent and regulatory exclusivity, [4] product profile, [5] cost and availability of supply, [6] the time and cost required to complete development, [7] the competitiveness of the marketplace (including the proprietary position and anticipated market share of the product), [8] the patent position with respect to such product (including the ability to obtain or enforce, or have obtained or enforced, such patent rights), [9] the third-party patent landscape relevant to the product, [10] the regulatory structure

---

[1] Docket Item ("D.I.") 1, Ex. A [hereinafter "SPA"] § 1.6(d).

involved, [11] the likelihood of obtaining marketing approval, [12] the anticipated or actual profitability of the applicable product, [13] anticipated or approved labeling, [14] present and future market potential, [15] Competitive Products and market conditions, [16] pricing and reimbursement considerations, [17] costs for development and costs for obtaining, prosecuting, maintaining and licensing relevant Intellectual Property rights, and [18] other technical, commercial, legal, scientific, regulatory, and medical considerations, all based on conditions then prevailing.[2]

On March 15, 2023, Representative brought two counts against Buyer: a "first cause of action for specific performance, and a "second cause of action for damages for breach of contract."[3] Representative sought an order of specific performance compelling Buyer to fulfill its promise to use Commercially Reasonable Efforts to develop the Company's product into a safe and effective FDA-approved therapy to treat cancer, for up to ten years.

After Buyer moved to dismiss, Representative filed an amended complaint.[4] Buyer again moved to dismiss the first count for failure to state a claim (the "Motion") on the grounds that (1) the request for damages was tantamount to an admission that it had an adequate remedy at law, and (2) the proposed relief was too open-ended to support an order of specific performance.[5] The parties briefed the Motion, and I granted it from the bench after argument on January 5, 2024 (the "Ruling").[6]

The Ruling concluded the requested remedy of specific performance to use commercially reasonable efforts to develop and commercialize a cancer therapy for up to ten years was too indefinite, as it could not offer Buyer the necessary notice as to the requirements of that order and what actions might be contemptuous under that

---

[2] *Id.* § 7.1.

[3] D.I. 23 ¶¶ 79–88.

[4] D.I. 3; D.I. 20; D.I. 23.

[5] D.I. 25; D.I. 31.

[6] D.I. 34; D.I. 43; D.I. 49; D.I. 50 Ex. 1 [hereinafter "Tr."].

order.[7]  The Ruling relied on *Carteret Bancorp, Inc. v. Home Group, Inc.*, which concludes specific enforcement of a promise to use best efforts to cause regulatory approvals to a corporate merger to be obtained was unavailable in view of the future, evolving complex commercial realities, as such an order would inappropriately involve the Court in the details of performance and be too indefinite to identify contemptuous conduct.[8]  The Ruling also relied on *26 Capital Acquisition Corp. v. Tiger Resort Asia Ltd.*, which concludes "the complexity of the undertaking and the associated difficulty of providing meaningful judicial oversight," the need to monitor compliance, and the risk of an order too vague to give any specific direction to the defendant, counseled against granting specific performance.[9]  And the Ruling relied on *AbbVie Endocrine Inc. v. Takeda Pharmaceutical Co. Ltd.*,[10] which explains that where a court is unable practically to enforce an order of specific performance due to "[t]he complexity of the business judgments involved," and the "involvement of the Court required to differentiate contemptuous from non-contemptuous failure to comply," a request for injunctive relief is "unworkable" and will not be awarded, and denying an injunction to speed up drug production on those grounds.  The Ruling noted the order Representative sought, to compel best efforts for years of drug development, was meaningfully more complex and open-ended than orders of specific performance to use best efforts, or to engage in a significant undertaking, to close a merger.[11]  The Ruling concluded that specific performance was so plainly unavailable that it could be rejected at the pleading stage.[12]

The Ruling reached that conclusion after engaging with SPA Section 8.6, which permits Representative to seek specific performance of Buyer's covenants

---

[7] Tr. at 38–42.

[8] 1988 WL 3010, at *8–9 (Del. Ch. Jan. 13, 1988).

[9] 2023 WL 5808203, at *26–28 (Del. Ch. Sept. 7, 2023) (citing *Carteret*, 1988 WL 3010, at *1).

[10] 2021 WL 4059793, at *7–8 (Del. Ch. Sept. 7, 2021).

[11] Tr. at 39 (distinguishing *Snow Phipps Grp., LLC v. KCAKE Acq., Inc.*, 2021 WL 1714202 (Del. Ch. Apr. 30, 2021) and *Level 4 Yoga, LLC v. CorePower Yoga, LLC*, 2022 WL 601862 (Del. Ch. Mar. 1, 2022)).

[12] *Id.* at 40 (distinguishing *Pharmathene, Inc. v. SIGA Techs., Inc.*, 2010 WL 4813553, at *10–11 (Del. Ch. Nov. 23, 2010)).

and agreements.[13]   The Ruling recognized "a court is not required to enforce a specific performance provision" and that where a party agrees to such a provision, "the party must establish a persuasive case-specific [reason] by the clause should not be respected."[14]  The Ruling concluded Buyer had met that burden.[15]

Without specific performance, Representative had no hook for this Court's equitable jurisdiction, so the Ruling dismissed the case for lack of subject matter jurisdiction subject to transfer to the Superior Court under 10 *Del. C.* § 1902.

On January 16, Representative filed an Application for Certification of an Interlocutory Appeal (the "Application").[16]  Buyer timely filed its opposition on January 26.[17]

Interlocutory appeals are "exceptional, not routine," and "generally not

---

[13] *Id.* at 39, 40; SPA § 8.6 ("Specific Performance.  Each party hereto acknowledges that the parties hereto will be irreparably harmed and that there will be no adequate remedy at law for any violation by any party of any of the covenants or agreements contained in the Transaction Documents.  It is accordingly agreed that, in addition to any other remedies which may be available upon the breach of any such covenants or agreements pursuant to Article VI, each of the parties hereto shall have the right, prior to any termination of this Agreement, to injunctive relief to restrain a breach or threatened breach of, or otherwise to seek to obtain specific performance of, any other party's covenants and agreements contained in this Agreement, including without limitation the covenants and agreements set forth in Section 1.6, Section 1.7 and Section 1.8 hereof, and the Securityholder Option Agreement, in the Chosen Courts, in addition to any other remedy to which it may be entitled pursuant to Article VI, at law or in equity, and each party hereto waives any requirement for the securing or posting of any bond or security in connection with any such remedy.").

[14] *Am. Healthcare Admin. Servs. v. Aizen*, 285 A.3d 461, 495–96 (Del. Ch. 2022); *accord 26 Cap. Acq. Corp.*, 2023 WL 5808203, at *26 (noting a provision calling for specific performance "is sufficient to support a decree of specific performance but does not mandate its issuance"); *see* Tr. at 26 (Representative recognizing the *Aizen* test).

[15] Tr. at 39.

[16] D.I. 50 [hereinafter "App."].

[17] D.I. 55.

favored."[18]  "Applications for interlocutory review are addressed to the sound discretion of this Court and are accepted only in extraordinary circumstances,"[19] as "they disrupt the normal procession of litigation, cause delay, and can threaten to exhaust scarce party and judicial resources."[20]  "So a Rule 42 application cannot be certified unless it clears two rigorous hurdles"[21]:  (1) the order must have "decide[d] a substantial issue of material importance that merits appellate review before a final judgment";[22] and (2)  there must be "substantial benefits" to granting the application that "will outweigh the certain costs that accompany an interlocutory appeal."[23]

From there, the Court considers whether:

---

[18] Supr. Ct. R. 42(b)(ii); *id.* at 42 cmt.

[19] *Robino-Bay Ct. Plaza, LLC v. W. Willow-Bay Ct., LLC*, 941 A.2d 1019, 2007 WL 4463593, at \*1 (Del. 2007) (TABLE).  Though this decision referred to the Supreme Court in its use of "this Court," trial courts exercise that same discretion in recommending whether interlocutory appeals should be certified.

[20] Supr. Ct. R. 42(b)(ii).

[21] *Elutions Cap. Ventures S.A.R.L. v. Betts*, 2022 WL 17075692, at \*3 (Del. Ch. Nov. 18, 2022) (internal quotation marks omitted).

[22] Supr. Ct. R. 42(b)(i).

[23] *Id.* at 42(b)(ii).

(A) The interlocutory order involves a question of law resolved for the first time in this State; (B) The decisions of the trial courts are conflicting upon the question of law; (C) The question of law relates to the constitutionality, construction, or application of a statute of this State, which has not been, but should be, settled by this Court in advance of an appeal from a final order; (D) The interlocutory order has sustained the controverted jurisdiction of the trial court; (E) The interlocutory order has reversed or set aside a prior decision of the trial court, a jury, or an administrative agency from which an appeal was taken to the trial court which had decided a significant issue and a review of the interlocutory order may terminate the litigation, substantially reduce further litigation, or otherwise serve considerations of justice; (F) The interlocutory order has vacated or opened a judgment of the trial court; (G) Review of the interlocutory order may terminate the litigation; or (H) Review of the interlocutory order may serve considerations of justice.[24]

Once the Court considers these factors and conducts its "own assessment of the most efficient and just schedule to resolve the case," the Court must then consider whether the likely benefits of interlocutory review outweigh the likely costs.[25] "If the balance is uncertain, the trial court should refuse to certify the interlocutory appeal."[26]

Representative's Application stretches the Ruling's case-specific determinations into blanket statements of law about best efforts clauses and specific performance stipulations. Contrary to Representative's assertions, the Ruling did not make all efforts clauses unenforceable by specific performance. Nor did the Ruling render meaningless all contractual stipulations to irreparable harm and the availability of specific performance. The Ruling applied decades of Delaware precedent to Representative's requested order of specific performance of a best efforts clause to bring a cancer therapeutic through clinical development to market over several years, and concluded that remedy would be too open-ended and require too much supervision to be feasible. And the Ruling exercised this Court's well-

---

[24] *Id.* at 42(b)(iii).

[25] *Id.*

[26] *Id.*

settled discretion to determine if specific performance is appropriate even in view of the parties' stipulation that it would be. The Ruling explicitly acknowledged that specific performance for best efforts clauses, in general and as coupled with specific performance stipulations, might be proper in other cases; and the Ruling contrasted the remedy Representative sought to other orders of specific performance to use best efforts.[27] That these decisions were reached at the pleading stage, rather than on an evidentiary record, reflects only the extremity of the specific performance requested, not any novelty in the Ruling.[28]

Viewed for what it is, the Ruling does not justify interlocutory appeal.

### A. The Ruling Did Not Decide A Substantial Issue Of Material Importance.

The Ruling does not present a "substantial issue of material importance that merits appellate review before final judgment."[29] Representative's theory that it does depends on misreading the Ruling to put all best efforts clauses and specific performance stipulations at risk. Read correctly as a case-specific application of

---

[27] Tr. at 40 ("In a world in which a different equitable remedy were sought, then perhaps those factors, together with 8.6, the equities, and the need for clear and specific guidance would support award of that equitable remedy. But that isn't what has been sought here and that isn't what has been offered to anchor this Court's subject matter jurisdiction."); *id.* at 39 (distinguishing *Snow Phipps*, 2021 WL 1714202).

[28] Representative's misreading of the Ruling seizes on two lines of the transcript that reflect the extremity of the relief Representative sought, not any ruling about all best efforts clauses in drug development. Tr. at 40 ("As to the argument that my determination on this point is premature. I can understand that argument. I can understand why in the *PharmAthene* case that that seemed premature. But here, I feel very confident that there is no set of circumstances in which specific performance would be awarded to compel drug development in connection with a best efforts clause."); Tr. at 42 ("I think those are all the thoughts that I had to share. I do appreciate the work that went into this. It was a fun puzzle to try to tease out. But at the end of the day, I don't see this Court[] ever awarding specific performance to compel performance of a best efforts clause for the development of a drug over several years.").

[29] Supr. Ct. R. 42(b)(i).

longstanding precedent, the Ruling presents no risk to those types of provisions, and therefore presents no substantial issue of material importance.

### B. There Are Not "Substantial Benefits" To Granting The Application.

While I may deny the Application on the substantial issue requirement alone, for completeness I also consider the factors set forth in Supreme Court Rule 42(b)(iii). Representative only addresses factors A, B, and H. These factors reinforce my recommendation.

**Rule 42(b)(iii)(A)**. The Ruling did not resolve a question of law for the first time in Delaware.[30] Representative sees a novel question of law in the narrow issue of whether the "the *Carteret* doctrine . . . can override a specific performance provision as a matter of law."[31] Put another way, the purported novel issue is whether the Court can conclude at the pleading stage that the specific performance decree sought would, under any reasonably conceivable set of facts, be too indefinite and require too much judicial supervision.

---

[30] Supr. Ct. R. 42(b)(iii)(A).

[31] App. at 7.

This Court did just that in 1973 in *Ryan v. Ocean Twelve, Inc.*, where "the owners of eight separate condominium units" sought an order of specific performance of "various building and construction commitments," "seek[ing] to have the developer fix or complete a variety of alleged defects which differ in degree, and no doubt complexity, as to each unit."[32]  The Court noted that specific performance requires "that the terms of the obligation be fixed and certain and that there is a . . . plan so precisely definite as to make compliance therewith subject to effective judicial supervision," and concluded at the pleading stage that "it would be inappropriate to grant specific performance in this case in view of the apparent complexities of the situation and the disparity, duration and nature of the work to be performed if the allegations are true."[33]

The introduction of a specific performance stipulation to the analysis introduces no novelty, as that stipulation is subject to this Court's discretion under well-settled precedent.  The Ruling did not resolve a question of law for the first time in Delaware.

**Rule 42(b)(iii)(B)**.  The Ruling does not conflict with the decisions of other trial courts.[34]  Representative sees conflict between the Ruling and *Pharmathene*, in which this Court noted the difficulties of ordering specific performance of an agreement to partner in drug development, but deferred the availability of specific performance until trial because of a gating issue of whether the parties agreed on essential terms.[35]  The Ruling cited *Pharmathene* with approval, but distinguished it

---

[32] 316 A.2d 573, 575 (Del. 1973).  More generally, this Court routinely evaluates the availability of equitable remedies at the pleading stage, and in fact has a mandate to do so to preserve the borders of its subject matter jurisdiction. *ISS Facility Servs., Inc. v. JanCo FS 2, LLC*, 2023 WL 4096014 (Del. Ch. June 20, 2023).  It is true that in some, perhaps even most circumstances, the availability of an equitable remedy is fact-specific and therefore ill-suited for a motion to dismiss. *MHS Capital LLC v. Goggin*, 2018 WL 2149718, at *5–6 (Del. Ch. May 10, 2018); *Morgan v. Wells*, 80 A.2d 504, 506–07 (Del. Ch. 1951).  But that is not so in every case, it was not so in *Ryan*, and it is not so here.

[33] *Ryan*, 316 A.2d at 575 (internal quotation marks omitted).

[34] Supr. Ct. R. 42(b)(iii)(B).

[35] *Pharmathene*, 2010 WL 4813553, at *10–11; *see also Pharmathene, Inc. v. SIGA Techs., Inc.*, 2008 WL 151855, at *13–15 (Del. Ch. Jan. 16, 2008) (concluding on a motion to

based on the extraordinary remedy Representative seeks.[36]   Representative's contention that the Ruling's treatment of Section 8.6 conflicts with other trial court decisions is based on Representative's misreading of that portion of the Ruling, as explained.

**Rule 42(b)(iii)(C)**.  No question of law relates to the constitutionality, construction, or application of a statute of this State, which has not been, but should be, settled by the Supreme Court in advance of an appeal from a final order.[37]  This factor does not support certification.

**Rule 42(b)(iii)(D)**.  The Ruling does not sustain the controverted jurisdiction of the trial court.[38]  This factor does not support certification.

**Rule 42(b)(iii)(E)**.  The Ruling does not reverse or set aside a prior decision of the trial court, a jury, or an administrative agency from which an appeal was taken to the trial court which had decided a significant issue and review of the interlocutory order will not terminate the litigation, substantially reduce further litigation, or otherwise serve considerations of justice.[39]   This factor does not support certification.

**Rule 42(b)(iii)(F)**.  The Ruling does not vacate or open a judgment of the trial

---

dismiss that it was reasonably conceivable that the plaintiff could show an agreement to agree contained all of the material and essential terms).

Representative argues for the first time that the Court should have considered specific performance only through the first milestone.  App. at 10.  This argument, not presented to the trial court, cannot support certification.  *Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Est. Fund*, 68 A.3d 665, 678 (Del. 2013); *see* Supr. Ct. R. 8 (precluding parties from raising new arguments on appeal).

[36] *See* Tr. at 40 ("I can understand why in the *Pharmathene* case that [rejecting specific performance] seemed premature.").

[37] Supr. Ct. R. 42(b)(iii)(C).

[38] *Id.* at 42(b)(iii)(D).

[39] *Id.* at 42(b)(iii)(E).

court.[40]  This factor does not support certification.

**Rule 42(b)(iii)(G)**.  Review of the Ruling will not terminate the litigation.[41]  This factor weighs against certifying the interlocutory appeal.

**Rule 42(b)(iii)(H)**.  Considerations of justice will not be served by an interlocutory appeal.[42]  Representative's argument under this factor depends on its misreading of the Ruling.  Representative also cries that Buyer's failure to use commercially reasonable efforts jeopardizes the Company's patent license, which has its own best efforts provision.  This argument depends on several dependent assumptions:  (1) that interlocutory appeal will restore the possibility of specific performance after trial; (2) that Representative will prevail at trial; (3) that the Court will award specific performance; and (4) that that remedy will preserve the Company's patent license, at all or in time.  This outcome is too uncertain to "outweigh the certain costs that accompany an interlocutory appeal."[43]  This factor does not support certification.

Considering all of the factors under Supreme Court Rule 42(b)(iii), I believe the balance weighs against certifying the interlocutory appeal.  I respectfully recommend against certification.

### C.  A Stay Is Warranted.

Representative asked for a stay of Section 1902's statutory period to effectuate a transfer to Superior Court.  In view of Section 1902's remedial purposes and reference to a "final" order, and deference to the Delaware Supreme Court on whether an interlocutory appeal should be certified, the election period is hereby stayed until (1) the time period for filing the requisite notice of appeal runs without any such notice being filed; (2) the Delaware Supreme Court refuses to certify an interlocutory appeal, or (3) the Delaware Supreme Court or this Court enters a final

---

[40] *Id.* at 42(b)(iii)(F).

[41] *Id.* at 42(b)(iii)(G).

[42] *Id.* at 42(b)(iii)(H).

[43] *Id.* at 42(b)(ii).

order on the Motion after appeal.[44]

### D.  CONCLUSION

For the foregoing reasons, I recommend against Representative's Application. The deadline to elect to transfer under Section 1902 is stayed.  **IT IS SO ORDERED**.

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor

MTZ/ms

cc:  All Counsel of Record, via *File & ServeXpress*

---

[44] *Benge v. Oak Grove Motor Ct., Inc.*, 2006 WL 2588934 (Del. Ch. Aug. 30, 2006).